Jamie L. Lucia (SBN 246163)
jlucia@steptoe.com
Amanda C. Schwartz (SBN 307522)
aschwartz@steptoe.com
STEPTOE & JOHNSON LLP
1 Market Street
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6678

Michael Dockterman (pro hac vice to be filed)
mdockterman@steptoe.com
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300

[Additional counsel listed on signature page]
Attorneys for Plaintiffs
LEAGUE OF WOMEN VOTERS OF CUPERTINO-SUNNYVALE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF CUPERTINO-SUNNYVALE,<br><br>        Plaintiffs,<br><br>     v.<br><br>CITY OF CUPERTINO, DARCY PAUL; DIANE THOMPSON, KIRSTEN SQUARCIA, CHRIS JENSEN, LIANG CHAO, KITTY MOORE, HUNG WEI, JON WILLEY, and DOES 1-100, inclusive,<br><br>        Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF** |

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

Plaintiff the League of Women Voters of Cupertino-Sunnyvale ("LWVCS"), for their Verified Complaint for Declaratory Relief and Injunctive Relief ("Complaint") against the City of Cupertino, California ("Cupertino"), its Mayor Darcy Paul, its City Manager (Acting) Diane Thompson, its City Clerk Kirsten Squarcia, the Members of the City Council and the City officials responsible for enforcement of an unlawful municipal ordinance in violation of the First Amendment to the United States and Article 1 of the California Constitutions (the individuals collectively referred to as the "Individual Defendants," and all defendants collectively referred to as the "Defendants"), hereby allege as follows, upon personal knowledge as to their own conduct and upon information and belief as to all other matters:

## INTRODUCTION

1.      Transparency is essential to accountable government. While the City of Cupertino and its leaders wave the banner of "transparency" they have, in reality, enacted an ordinance to silence free speech and chill the ability of citizens to petition the government by making basic civic participation conditional on paying a fee. Talking the talk in a way that obscures how they have walked the walk, the offending ordinance mandates extensive scrutiny of citizens who wish to speak up, and under the ordinance citizen advocacy carries the risk of fines, jail time, and even a ban on speaking to elected officials. The ordinance, on its face, violates the fundamental principles of free speech, freedom of association, and the ability to petition the

1

government guaranteed by the United States Constitution and the Constitution of the State of California.

2.     The threat to these fundamental rights is open and obvious. Under the guise of a "lobbying disclosure ordinance," the City now requires a wide swath of resident who want to speak to their councilmember or to any other city official to pay an annual fee and complete extensive disclosure forms if they want to try to influence city legislation or administrative action. If they do not, they face jail time, criminal or civil fines, injunctions, and a one-year ban on petitioning their elected officials for redress of grievances. To add insult to injury, an assortment of favored speakers, such as the Chamber of Commerce and certain established media sources, are exempted from these restrictions.  Those not exempted are independent bloggers or newsletter writers, of course.

3.     The ordinance is hopelessly overbroad. Its definition of "organization" is not limited to for-profit businesses or political committees; among other things, it includes 501(c)(3) organizations, such as religious organizations, charitable organizations, and educational organizations, like LWVCS. For example, it would expressly require each of the following to register as lobbyists and pay a fee or face serious penalties, including criminal charges:

       i.   A church or synagogue sending its minister or other employee to speak to a councilmember to encourage the councilmember to support an affordable housing project;

2

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

    ii.  A neighborhood group that encouraged all of its members to write to the Community Development Department to oppose putting a large, eyesore self-storage facility in a residential area;

    iii.  LWVCS from sending a representative to the City Clerk to encourage her to ensure that voting places for elections are properly advertised, in ADA accessible locations, and close to transit routes for voters who do not drive; and

    iv.  A school PTA from asking its members to meet with their councilmember about road construction causing congestion near the school.

4.    The ordinance appears to cover members of "organizations" even if they are speaking in their individual capacity and not on behalf of the "organization."

5.    As the ordinance was under debate, certain Defendants expressly called out a member of LWVCS, whose newsletter updates her neighbors on municipal affairs, expresses her opinions, and sometimes calls on her neighbors to take action as the reason for the ordinance's enactment. Boiled down to its basics, the ordinance seeks to condition public discourse about the workings of government to those who pay a fee and report to the government all of their members and all of the sources of organizational support.

6.    Moreover, by requiring Cupertino citizens who lawfully spend their money on encouraging civic participation in City policy to register as lobbyists, the

3

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

ordinance appears to cover—again, based on councilmembers' statements—independent journalists and opinion-writers not affiliated with exempt established media organizations to cease their coverage on pain of criminal and civil penalties.

7.    As if that were not bad enough, certain members of the City Council, including the Mayor of Cupertino, have said that they are dissatisfied at the City's failure to pursue violations of the ordinance with vigor and have proposed to amend it to create a private right of action for penalties and attorneys' fees to anyone who brings an action. That would enable councilmembers themselves or their allies to sue their critics for speaking out against them or encouraging others to do so. It would give powerful people who can afford lawyers the ability to file Strategic Lawsuits Against Public Participation ("SLAPP") to chill or punish their critics: a developer of a polluting project could sue an environmental group for encouraging its members to oppose it.

8.    Under the ordinance, a wealthy mansion-owner could sue a community group for encouraging its members to support affordable housing near his home. For that matter, a member of a hate group could sue the local NAACP chapter for encouraging its members to contact their councilmember to encourage a fair hiring process for city employees. It is a matter of grace and not the text of the ordinance that prevents these abusive uses of the ordinance. Indeed, at least Defendant Chao has specifically called for "any organization that is trying to influence public opinion,"

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

including beyond "the normal sort of lobbying" and news media, to face government fees, registration, and burdensome disclosure requirements.

9.     The ordinance, moreover, forces people who are not, in any sense of the word, lobbyists, to lie. Concerned citizens are not "lobbyists." Charities are not "lobbyists." But—like laws in certain authoritarian countries that have forced non-governmental organizations and independent media to falsely label themselves as foreign agents—the City is forcing people to falsely label themselves as lobbyists and risk their listeners giving less weight to what they say for that reason. And of course, that burden falls only on those who are trying to get the City to do something other than what its government wanted to do anyway.

10.    To date, the City Attorney has declined to enforce the ordinance, but that does not make the ordinance any more acceptable under the law. Its very existence chills the right of free assembly and offends the rights of free speech and the ability to petition the government. Serendipity is not a reason for an unlawful ordinance to remain on the books, and there is no guarantee that other City officials will not invoke the ordinance or that a new City Attorney would take action against plaintiff and their members.

11.    The burden imposed by the City Ordinance goes beyond the power of local government, or for that matter any level of government, to restrict speech on core political matters. By this action, Plaintiff seeks to empower citizens throughout Cupertino to participate in and shape their communities without restrictions that, in

5

practice, will favor the wealthy and skew the manner in which persons can exercise their constitutionally protected rights.

12.     The League of Women Voters was formed in 1920 as an outgrowth of the movement to give women the right to vote following the passage of the 19th Amendment to the United States Constitution. Some of the League's earliest causes included support for child labor laws, minimum wage, compulsory education and equal opportunity for women, and the League's advocacy work affected the creation of laws that are still in force today. Many people talk about how the nation needs greater participation from the public; the League is a model of participation in the democratic process at local, regional, state and federal levels.

13.     LWVCS accomplishes this primarily through its educational efforts to research and present unbiased, nonpartisan information about candidates for office, propositions and measures, and voting processes and procedures. The LWVCS does not endorse or oppose candidates or political parties, donate money to campaigns or advertise for or against campaigns, criticize or praise sitting elected officials, or participate in any candidate's election campaign. The LWVCS is committed to working more broadly on community education, member education, and advocacy in the community.

14.     Plaintiff and their members wish to continue their work; however, they are deterred from doing so by Cupertino's lobbyist regulation ordinance.

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

15.     Ordinance 21-2222 of the Cupertino Municipal Code regulating lobbying activities ("the Ordinance") imposes onerous registration, reporting, and disclosure requirements on any individual or organization that influences or attempts to influence, through "purposeful communication," a legislative or administrative action. The Ordinance fails, however, to distinguish between communication and education and fails to differentiate amongst the types of organizations subject to the Ordinance. Plaintiffs and other nonprofit organizations that disseminate information relating to local political matters in order to foster a free and open government are now considered lobbyist organizations despite the fact that they do not employ any professional lobbyists or intentionally engage in lobbying activities. Under the Ordinance, Plaintiffs and similar nonprofits are now required to submit to the expensive and burdensome lobbyist requirements to exercise their protected rights to speak freely and petition the government.

16.     The Ordinance is content-based, speaker-based, and overbroad, imposing prior restraints on the most fundamental aspects of local civic participation, and it violates the First and Fourteenth Amendments of the U.S. Constitution and Article 1 of the California Constitution on its face.

## JURISDICTION

17.     The Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the First and Fourteenth Amendments to the United

7

States Constitution**.** The Court also has supplemental jurisdiction over Plaintiffs' claims under Article I of the California Constitution pursuant to 28 U.S.C. § 1367.

18.    This Court has personal jurisdiction over the Defendants because they reside in California and the acts giving rise to the claims occurred in California.

## VENUE AND INTRADISTRICT ASSIGNMENT

19.    Venue is proper in the Northern District of California pursuant to 28 U.S.C § 1391(b), in that a substantial part of the events giving rise to the claims occurred in this district, and Defendants reside in this district.

20.    Intradistrict assignment is proper in the San Jose Division because a substantial part of the events giving rise to the claims occurred in Santa Clara County and Defendants reside in Santa Clara County.

## PARTIES

21.    LWVCS is a nonprofit public benefit corporation. It is located in Santa Clara County, California. LWVCS is a registered 501(c)(4) nonprofit corporation.

22.    Cupertino is a general-law municipal corporation organized and existing under the laws of the State of California. It is located in Santa Clara County, California. Cupertino is responsible for amending, approving, and adopting the Ordinance set forth at Chapter 2.1000 of the Cupertino Municipal Code. Through its agents, including the Mayor, City Manager, City Councilmembers, City Clerk, and City Attorney, it enforces the challenged Ordinance and may issue citations and prosecute alleged violations thereunder.

23.     Defendant Darcy Paul is the Mayor of Cupertino and is sued in his official capacity. Defendant Paul is responsible for ensuring that laws and policies are enforced and for overseeing city officers and employees.

24.     Defendants Liang Chao, Kitty Moore, Hung Wei, and Jon Willey are City Councilmembers of Cupertino and are responsible for enacting ordinances and supervising their enforcement. They are sued in their official capacity.

25.     Defendant Chris Jensen is the City Attorney of Cupertino and is sued in his official capacity. Defendant Jensen is responsible for enforcing the Cupertino Municipal Code.

26.     Defendant Diane Thompson is the Acting City Manager of Cupertino and is sued in her official capacity. Defendant Thompson is responsible for the administration of the City's government, including implementing municipal policies and ordinances. Defendant Thompson is expected to leave her employment on or about July 22, 2022 and her successor is currently unknown, but will be substituted for her pursuant to Federal Rule of Civil Procedure 25(d).

27.     Defendant Kirsten Squarcia is the City Clerk of Cupertino and is sued in her official capacity. Defendant Squarcia is responsible for administering procedures for lobbyist registration and maintaining lobbyist records.

28.     Defendants Does 1-100 are officials of the City of Cupertino or other individuals responsible for enforcing municipal policies and ordinances. They are sued in their official capacity.

9

# FACTUAL BACKGROUND

29.     The LWVCS is a local chapter of the League of Women Voters of the United States ("LWV", collectively, LWVCS and LWV are sometimes referred to as the "the League"). The LWV was founded in 1920 as an outgrowth of the struggle to win voting rights for women. LWV is organized in more than 850 communities and exists in every state with more than 500,000 members and supporters nationwide. One of the League's primary goals is to promote government across the nation that is representative, accountable, responsive, and that ensures opportunities for effective and inclusive voter participation in government decision-making. In addition to sponsoring candidate forums and debates, the League hosts hundreds of events and programs every year to educate voters across the country. The League distributes millions of educational materials about state and local elections.

30.     LWVCS, like the LWV, is a community-based political organization dedicated to encouraging informed and active participation in government and the political process through advocacy and education. Both the LWVCS and LWV are proud to be nonpartisan, neither supporting nor opposing candidates or political parties at any level of government, but always working on vital issues of concern to members and the public. The League accomplishes its mission through community education initiatives and advocacy.

31.     The LWVCS has approximately 51 members in Cupertino. Members in Cupertino and throughout California research and present unbiased, nonpartisan

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

information about candidates, the voting process, and voting propositions. Additionally, the League works to identify and study local and statewide issues of concern, develop nonpartisan positions on the issues, and advocate for or against particular policies or laws.

32.     Nationally, the LWV operates through two nonprofit entities. One is the League of Women Voters, a 501(c)(4) corporation, which takes positions on certain policy issues and engages in action and advocacy activities. The other is the Education Fund ("the Fund"), a 501(c)(3) corporation, which conducts all of the League's voter service and community education activities. Importantly, neither the national League of Women Voters nor any of its state or local chapters, including LWVCS, uses the Education Fund to take positions on political issues or candidates.

33.     The League's members in Cupertino engage in voter service and advocacy activities. Voter service activities are primarily educational and have included informing the public about voting procedures; registering voters; urging citizens to vote; giving factual information about candidates and moderating candidate forums; and explaining ballot issues. LWVCS engages in advocacy by providing information; building public opinion; and providing community education about issues it researches and on which it develops nonpartisan positions. A critical component of the League's activities is to promote access to the actions of government by serving as a watchdog on local government actions, ensuring

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

transparency in Cupertino government and education of all Cupertino residents on nonpartisan matters of common interest.

34.     In November 2020, Defendant Paul proposed a lobbying registration ordinance to "regulate lobbyists who seek to influence legislative and administration actions taken by City officials and City bodies."  In a City Council Meeting on November 2, 2020, Defendant Chao supported the proposed ordinance in a statement where she said "other things in our community like lobbying" and "news sort of like lobbying" should be subject to disclosure laws, specifically calling out the e-newsletter, *Cupertino Matters*, published by a member of LWVCS.

35.     In February 2021, the City Manager's Office released a Staff Report discussing the proposed ordinance. The report references the Cities of Santa Clara and San Jose and Santa Clara County as municipalities with "broad ordinances that regulate lobbyists seeking to influence decisions of their respective legislative bodies and officials." Per the report, the proposed ordinance was closely modeled off of these.

36.     In March 2021, Defendant Mayor Paul approved Ordinance Number 21-2222, amending the Cupertino Municipal Code with the addition of Chapter 2.1000 ("Regulation of Lobbying Activities"). The ordinance was attested to by Defendant Squarcia.  The Ordinance regulates "lobbyists," as defined—although, as explained below, the Ordinance's definition goes far beyond any normal definition of the term. The Ordinance went into effect on July 1, 2021.

12

37.     During a Cupertino City Council Meeting on April 19, 2022, Defendant Paul asked the Cupertino City Attorney Chris Jensen whether, under the 501(c)(3) exemption in the Ordinance, members of 501(c)(3) nonprofit organizations going before City Council had to disclose that they were lobbying on behalf of their organization. Jensen confirmed Defendant Paul's understanding of the Ordinance. He stated that for the exception to be narrower and allow for any member of a 501(c)(3) organization to engage in "lobbying" activity as defined without adhering to the regulations, the Ordinance would have to be modified.

38.     Defendants have made a number of other statements that make clear that the intent of the ordinance is to regulate advocacy and public participation broadly, not just lobbying. For example, during a May 3, 2022 City Council Meeting, Defendant Chao expressed the opinion that news media attempting to influence public opinion were "lobbying." She expressed the view that it was problematic that news media were excluded from many lobbying registration ordinances and that it was important that ordinances cover not only the "normal sort of lobbying" but "any organization that is trying to influence public opinion." Indeed, Defendant Chao then expressed the view that "advocacy," including "news media" and "a lot of nonprofit[s]," should be subject to registration and disclosure requirements, further confirming that city officials are attempting to regulate advocacy broadly. The entire exchange is available on YouTube:  https://youtu.be/9aNucrIJlDU?t=7218.

**The Ordinance**

13

39.   The preambulatory stated purpose of the Ordinance is to "impose registration and disclosure requirements on those engaged in lobby efforts to influence the decisions of City policy makers for Compensation." Despite this language, as explained below, the Ordinance's operative terms expressly do not require Compensation for conduct to be defined as "lobbying" or for a person to be defined as a "lobbyist."

40.   The Ordinance defines "lobbying" as "the Influencing or attempting to influence a Legislative Action or Administrative Action of the City."

41.   The Ordinance defines "influencing" as any "purposeful communication" that promotes, supports, modifies, opposes, causes the delay or abandonment of conduct, or intentionally affects the behavior of a city official through persuasion, information, incentives, statistics, studies, or analyses.

42.   Under the Ordinance, there are three defined categories of "lobbyists." As defined in the Ordinance, a "Business or Organization Lobbyist," the category of lobbyist which includes Plaintiffs, is:

> Any business or organization, whose owner(s), officer(s), or employee(s), carry out lobbying on its behalf in an aggregate amount of ten hours or more within any consecutive twelve (12) month period, whether or not such officers or employees are specifically compensated to engage in Lobbying; provided, that the activities of officers shall be considered Lobbying only if those officers receive Compensation by the business or Organization beyond reimbursement for their reasonable travel, meals or incidental expenses. . . .

14

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

There are two additional defined "lobbyists" that fall more or less within the traditional definition of lobbying, meaning influencing city action for compensation. A "Contract Lobbyist" is:

> A Person who engages in Lobbying on behalf of one or more Clients (acting individually or through agents, associates, employees or contractors) and who has received or has entered into an agreement for Compensation of one thousand dollars ($1,000.00) or more, or equivalent nonmonetary Compensation ("threshold Compensation") for engaging in Lobbying during any consecutive three-month period;

Similarly, an "Expenditure Lobbyist" is:

> A Person who makes payments or incurs expenditures of five thousand dollars ($5,000.00) or more during any calendar year in connection with carrying out public relations, advertising or similar activities with the intent of soliciting or urging, directly or indirectly, other Persons to communicate directly with any City Official in order to attempt to influence Legislative Action or Administrative Action.  The five thousand dollar ($5,000.00) threshold shall not include: (A) Compensation paid to Contract Lobbyists or employees for Lobbying; or (B) dues payments, donations, or other economic consideration paid to an Organization, regardless of whether the dues payments, donations or other economic consideration are used in whole or in part to lobby.

43.     The Ordinance contains certain exemptions, but owners, directors, employees other than officers, volunteers, and others who work with or volunteer for appear not to be exempted. Thus, under this definition, a business is a "lobbyist" if its employee or owner meets with the building department for eleven hours to try to get issuance of a building permit. Similarly, a racial justice nonprofit is a lobbyist if it meets with the Chief of Police once a month for an hour each time about efforts to reduce biased policing.

15

44.    "Organization" is defined as "any Person that is not an individual" and "Person" is defined as "any individual, domestic or foreign corporation, for-profit or nonprofit entity, firm, association, syndicate, union, chamber of commerce, joint-stock company, partnership of any kind, limited liability company, common-law trust, society, or any other group of Persons acting in concert."

45.    Thus an "Organization" includes public charities, social welfare organizations, labor unions, and unincorporated associations. Any group of neighbors forming an unincorporated association that spends more than ten hours trying to influence city officials—for example, to support or oppose a zoning application—is a "lobbyist" under the Ordinance.

46.    Under this definition, a nonprofit that rents a school gymnasium to hold an event to express concern about the City's lack of affordable housing might well be a "lobbyist." A community theater that puts on a play about policing policy in Cupertino would likely cross the threshold to be a "lobbyist." Indeed, a protest organizer who has to pay for security or insurance for a parade that addresses municipal policy—say, a group bike ride to protest unsafe street conditions for pedestrians and cyclists—is likely a "lobbyist." So is a concerned citizen who creates an online newsletter for her community about municipal issues and spends more than $5,000 on web hosting, web design, and an attorney to file public records requests.

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

47.     The Ordinance contains several exemptions to its definition of "Lobbyist," but these seem to confirm that the ordinance is intended to capture normal advocacy activity that:

a.  Individuals whose communications regarding legislative or administrative actions are "solely limited" to appearing at public City meetings, as long as their communications are available in the public record. This exemption, however, would not apply to an individual who meets with a city employee outside of a public meeting—such as, for example an organization meeting with responsible civic police authorities to discuss concerns about racial profiling.

b.  Board members or employees of 501(c)(3) nonprofit organizations, unless the organization is lobbying for a specific matter which it received compensation to lobby for or against. This exemption, however, does not exempt *the nonprofit itself* from registering as a "lobbyist." Nor would it apply to nonprofits that are recognized under other provisions of the tax code or to volunteers, officers, or other individuals other than employees or Board members. It would also appear to endanger nonprofits that discuss their mission-related advocacy with their donors, even small-dollar individual donors.

c.  A "Media" exemption "when limiting its action to the ordinary course of news gathering or editorial activity, as carried out by

17

members of the press." The reference to "members of the press" appears to be designed to limit this exemption to professional journalists and not independent citizen-journalists writing blogs or email newsletters, especially in combination with councilmembers' comments about email newsletters.

d. "Persons reimbursed for only their reasonable travel, meals or incidental expenses, including, but not limited to, uncompensated members or directors of nonprofit Organizations, such as chambers of commerce." Again, this exemption does not exempt a nonprofit itself from being required to register as a "lobbyist."

48.     Several exemptions facially discriminate among speakers. For example, members of neighborhood associations are exempt, but members of a group criticizing the city's housing policy as exclusionary are not.

49.     The Ordinance requires all "lobbyists," as defined, to register with the City Clerk within 15 days after qualifying as a "lobbyist" and file amended registrations within 15 days of any change to its registration information, including any legislative or administrative action the "lobbyist" has engaged in. "Lobbyists" are required to renew their registration annually.

50.     The Ordinance imposes an annual registration fee for all "lobbyists" subject to the registration requirements. In addition to the annual fee, each "lobbyist"

18

is required to pay a fee per client for whom any "lobbying" is undertaken. "Lobbyists" are subject to fines for any delinquent fees.

51.    To register, "lobbyists" are required to disclose a long list of information to the City and "lobbyists" must also file quarterly reports.

52.    The Ordinance requires any Business or Organization lobbyist to disclose, among other things:

      a.  The name, business address, telephone, email addresses, and business license of all persons required to register pursuant to the Ordinance

      b.  The names of the president, secretary, chief financial officer, and agent for service of process

      c.  The names of owners, officers, or employees conducting lobbying activities and the items of legislative or administrative action the lobbyist is attempting to influence

      d.  Contacts made with city officials during the preceding calendar year for the purpose of influencing or attempting to influence legislative or administrative action, including a brief description of the items, the dates of contact, the method of contact, and the number of contacts

53.    The Ordinance requires lobbyists to file quarterly reports with the City Clerk regardless of whether any lobbying activities occurred during the prior period.

19
**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

54.     The Ordinance requires any member of a Business or Organization Lobbyist to identify himself/herself and the business or organization he/she represents when appearing in a Lobbying capacity at any meeting with a City Official' or at a public meeting of the City Council or any other City board, commission, or hearing.

55.     The Ordinance requires those appearing as "lobbyists" when meeting with City officials or at public meetings to identify themselves as such and disclose the client or organization that they represent.

56.     The Ordinance imposes penalties on persons or entities who violate any section of the Ordinance. These penalties include fines and debarment from "lobbying." The Ordinance also criminalizes failure to comply with the Ordinance as a misdemeanor under Cupertino Municipal Code § 1.12.010, which makes violation of any ordinance a misdemeanor unless explicitly stated otherwise. Thus, a nonprofit organization, either officially or through its members even if not expressly acting on behalf of the nonprofit organization, that meets with a city official for one hour a month about a municipal policy is subject to civil penalties of $25 a day, debarment from speaking to city officials about city legislative or administrative matters, and criminal penalties that include six months' jail time with each day being a separate offense.

57.     The Ordinance specifically requires "lobbyists" to identify themselves as such when dealing with city officials and employees. That is the case even when a

20

NC   Document 1   Filed 07/19/22   Page 22 of 44

nonprofit organization is involved in pure advocacy work that the Ordinance defines as "lobbying" contrary to ordinary understandings of the term. Organizations thus face city officials and employees discrediting their viewpoints as bought-and-paid-for lobbying when it is not. By contrast, the content- and speaker-based categories that the City exempts from registration as "lobbyists" are not required to falsely label themselves as "lobbyists" to speak to public officials.

58.     The regulations under 501(c)(3) promulgated by the Internal Revenue Service allow nonprofit organizations qualified under 501(c)(3) to engage in limited amounts of lobbying activity, but the activity may not be a substantial part of what the organizations do.  Donations to 501(c)(3) corporations are tax-deductible. This allows the League and its members, through activities supported by the Fund, to engage in all of the activities necessary to achieve its nonpartisan educational and informational mission ensuring transparency in local government, of which lobbying is and can only be a small component, using funds from donor contributions.

59.     The Ordinance makes no distinction between the activities funded by a 501(c)(3) organization and a 501(c)(4) organization. Under the Ordinance, both LWVCS and its members engaged in activities supported through the Fund must submit to onerous regulations to do what they previously did without constraint. Treating 501(c)(3) organizations as if they were lobbyists also endangers LWVCS's classification as an organization whose supporters can deduct their financial support to the League.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF

60.     Maintaining this dual structure is crucial to the ability of LWVCS to engage in all of the activities necessary to achieve its mission, pursuing its advocacy activities without tax-deductible contributions and maintaining a clear distinction between the two functions. These distinctions are embodied in the Internal Revenue Code and have withstood the test of time both in California and throughout the United States. Members of LWVCS and LWV contribute separately to the corporate League of Women Voters and to the tax-exempt Fund.

61.     The City's departure from these longstanding classifications threatens to chill contributions to LWVCS and to the Fund, and to impair the League and LWVCS's ability to carry out their mission. More important for the citizens of Cupertino, the Ordinance seriously undermines public information and access to the mechanics of government by chilling the activities of the League and its members, materially diminishing the crucial role played by the League and its members to ensure transparency in Cupertino government as a watchdog for all Cupertino residents.

62.     Members donated to the Fund because of its status as a 501(c)(3) organization. The Fund is now required by the Ordinance to disclose substantial information about its nonpartisan donors, which has a chilling effect on the donors' choices to contribute. Without donations, LWVCS cannot engage in a substantial amount of the work it seeks to do.

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

63.    The Ordinance restricts and burdens LWV and its 501(c)(3) and 501(c)(4) affiliates by placing onerous and unnecessary burdens on their work through the reporting and fee requirements on all organizations whose members may speak to the City Council or agents of Cupertino government. LWVCS relies on this dual structure to accomplish its work, yet under the Ordinance's broad language, LWVCS and its members who would otherwise be exempt from the Internal Revenue Code's definition of "lobbyist" are now subject to the regulations because activities supported by the Fund, which are 501(c)(3) nonpartisan voter service and education activities, are treated the same way that partisan lobbying is treated by the City.

### Post-Enactment Chilling Effects

64.    Since the Ordinance has gone into effect, both the League itself and its members have been deterred from exercising their protected rights to assemble, to engage in free speech and to petition the government. Among other things, to avoid triggering the expensive and onerous lobbyist regulations and in response to it being singled out as a target by a member of the City Council, one member modified her weekly electronic newsletter, *Cupertino Matters*. The newsletter addresses key council, commission, and community outreach meetings and decisions as well as other events in Cupertino, including matters that involve legislative or administrative action by the City. Previously, the newsletter encouraged readers to submit comments to the City Council; in light of the ordinance and councilmembers' specific hostility toward the newsletter, this member modified the newsletter so that she gives only

23

contact information for the City Council and no longer calls on readers to take action. She is concerned that even this may not be enough to escape fines or criminal prosecution under the Ordinance, and has had to spend time discussing the ordinance with LWVCS board members in an attempt to minimize her risk of prosecution instead of covering city events.

65.     Other members of LWVCS, including officers of LWVCS, have expressed that they are hesitant to speak up about positions taken by the City government on a number of items and have refrained from expressing concern about municipal transparency and government practices.

66.     The City itself has enforcement power over its own ordinances. Even for criminal prosecutions, the City has the power to charge and prosecute Municipal Code crimes itself through its City Attorney without the concurrence of the District Attorney. For administrative penalties, City employees or even the City Council itself are the decisionmakers, and a wide range of City officials have the power to initiate administrative penalty proceedings.

67.     By this action, Plaintiffs now seek the Court's aid in protection of their constitutional rights.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Injunctive Relief)
### Facial Violation of the Freedom of Speech
### (First and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)

1
2
3
4

68.     Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

5
6
7
8

69.     The First Amendment of the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, guarantees Plaintiffs the right to freedom of speech.

9
10
11

70.     The Ordinance violates the Free Speech Clause of the First Amendment on its face because it impermissibly curtails Plaintiffs' free-speech rights.

12
13
14
15
16
17
18
19
20
21

71.     The Ordinance is a content-based regulation because it restricts certain types of expression based on the content thereof, including communication regarding matters of local political concern and other municipal matters, that would otherwise be permitted without constraint. Content-based laws such as these "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *See Reed v. Town of Gilbert*, Ariz., 576 U.S. 155, 163 (2015). The Ordinance is not narrowly tailored to further a compelling government interest.

22
23
24
25
26
27
28

72.     The Ordinance is a speaker-based regulation because it allows the unhindered speech of exempted individuals such as journalists, public officials, and certain employees of 501(c)(3) corporations, but subjects burdensome registration and reporting requirements on other members of the public. Speaker-based laws such as these "demand strict scrutiny when they reflect the Government's preference for

the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)." *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 658 (1994). The Ordinance is not narrowly tailored to further a compelling government interest.

73.     The Ordinance is also facially overbroad. It requires any corporation, regardless of whether it employs a professional lobbyist, whose members or employees communicate about local political or other municipal matters in any way that affects the decision-making of a local official to submit to onerous and expensive registration, reporting, and disclosure requirements. When a law implicates First Amendment rights, it may be invalidated on its face as unconstitutionally overbroad if "its deterrent effect on legitimate expression is both real and substantial" and "it is not readily subject to a narrowing construction by the state courts." *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975).

74.     The Ordinance also constitutes a prior restraint: organizations that engage in noncommercial advocacy work on municipal matters are subject to fines and even criminal prosecution if they do not pay a fee and complete burdensome requirements before doing so.

75.     The Ordinance also compels speech. By defining as "lobbying" noncommercial political speech, the Ordinance forces organizations, on pain of civil and criminal penalties, to falsely describe themselves as "lobbyists" in order to engage in advocacy.

76.     The "lobbyist" ordinance has a deterrent effect on legitimate political expression that is both real and substantial. This is evident from, among other things, LWVCS's member removing any express call to contact councilmembers from *Cupertino Matters* and members of LWVCS expressing hesitancy to object to positions taken by the City on a number of items and reluctance to express concern about a lack of transparency and poor governance practices used by the City.

77.     The City's regulation of "lobbyists" is not readily susceptible to a narrowing construction. The ordinance applies broadly to professional lobbyists and ordinary citizens and organizations engaging in public petition and participation in the same way. In addition, it restricts educational and other noncommercial discourse in the same way as it limits commercial lobbying activity, making association of like-minded citizens a potential crime. The Ordinance would have to be rewritten to be construed more narrowly; indeed, councilmembers' public statements suggest that the breadth is fully intentional.

78.     The City has no compelling or significant interest that can justify the Ordinance, and the purported interests listed in the Ordinance are not significant or compelling to justify its treatment of ordinary advocacy, petition, and other public participation as "lobbying."

79.     Plaintiff and their members have been chilled from engaging in legitimate political expression because of their reasonable aversion to the

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

burdensome and expensive registration, reporting, and disclosure requirements set forth in the Ordinance.

80.     The City is violating or imminently will violate the First Amendment by enforcing the Ordinance against protected speech.

81.     As a proximate result of the foregoing acts of the City, Plaintiff and their members have suffered and will continue to suffer hardship and damages, which include, but are not limited to, violation of their and their members' constitutional rights.

82.     The City's actions have and will continue to chill, deter, and infringe on Plaintiff and their members' First Amendment free speech rights unless enjoined or restrained by an order of the Court.

83.     To prevent such injury, Plaintiff seeks an injunction pursuant to 42 U.S.C. § 1983 to prevent violation of their rights under the First Amendment of the U.S. Constitution.

84.     As a result of the City's conduct as set forth above, Plaintiff has been compelled to retain legal counsel to prosecute this action and has incurred and will continue to incur attorneys' fees and costs. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and costs associated with this action.

**SECOND CLAIM FOR RELIEF**
**(Declaratory Relief)**
**Facial Violation of the Freedom of Speech**
**(First and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

85.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

86.     A dispute and actual controversy has arisen and now exists between the LWVCS and the City regarding the rights, duties, and obligations of the parties to each other as a result of the City's Ordinance.

87.     The LWVCS desires a judicial determination of the respective rights, duties, and obligations of the parties. In particular, Plaintiff desires a declaration that the Ordinance is unconstitutional and constitutes a facial violation of the freedom of speech under the First and Fourteenth Amendments of the U.S. Constitution.

88.     There is an adversary dispute between the parties because they have an adversary interest with respect to the Court's declaration on the issue above.

89.     Such a declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties, and obligations to each other as a result of the Ordinance.

90.     The LWVCS seeks such declaratory relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 (authorizing issuance of declaratory relief in a manner otherwise within the court's jurisdiction).

**91.**     As a result of the City's conduct as set forth above, Plaintiff has been compelled to retain legal counsel to prosecute this action and has incurred and will continue to incur attorneys' fees and costs. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and costs associated with this action.

**THIRD CLAIM FOR RELIEF**
**(Injunctive Relief)**
**Facial Violation of the Freedom of Speech**
**(Article 1, Section 2 of the California Constitution)**

92.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

93.    Article 1, Section § 2(a) of the California Constitution guarantees Plaintiff and their members the right to freedom of speech.

94.    The Ordinance violates the California Constitution on its face because it impermissibly curtails Plaintiff and their members' free-speech rights.

95.    The methods for evaluating whether a regulation is content based and whether a content-based regulation is constitutional are similar under federal and state law. *See Glendale Assocs.*, *Ltd. v. NLRB*, 347 F.3d 1145, 1155–56 (9th Cir. 2003). The Ordinance is a content-based regulation of protected free speech under the California Constitution, as it is under the U.S. Constitution. As under the United States Constitution, the Ordinance is not narrowly tailored to further a compelling government interest.

96.    As under the United States Constitution, the Ordinance is overbroad on its face under the California Constitution because it has a substantial and real deterrent effect on the exercise of protected free speech and is not subject to a more narrowing construction.

30

97.     As under the United States Constitution, the Ordinance constitutes an unconstitutional prior restraint.

98.     As under the United States Constitution, the Ordinance compels organizations and individuals engaged in advocacy to engage in speech by misdescribing themselves as "lobbyists."

99.     The City of Cupertino has no compelling or significant interest that can justify the Ordinance, and the purported interests listed in the Ordinance are not significant or compelling.

100.    Plaintiff and their members have been chilled from engaging in legitimate political expression because of their reasonable aversion to the burdensome and expensive registration, reporting, and disclosure requirements set forth in the Ordinance.

101.    The City is violating or imminently will violate Article 1, Section § 2(a) of the California Constitution by enforcing the Ordinance against protect speech.

102.    As a proximate result of the foregoing acts by the City, Plaintiff has suffered and will continue to suffer hardship and damages, which include, but are not limited to, violation of their and their members' constitutional rights.

103.    The City's actions have and will continue to chill, deter, and infringe on Plaintiff and their members' free speech rights under the California Constitution unless enjoined or restrained by an order of the Court.

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

104.   To prevent such injury, Plaintiff seeks an injunction pursuant to 42 U.S.C. § 1983 to prevent violation of its free speech rights under the California Constitution.

105.   As a result of the City's conduct as set forth above, Plaintiff has been compelled to retain legal counsel to prosecute this action and has incurred and will continue to incur attorneys' fees and costs. Pursuant to C.C.P. § 1021.5, Plaintiff is entitled to recover attorneys' fees and the costs associated with this action.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Relief)**
**Facial Violation of the Freedom of Speech**
**(Article 1, Section 2 of the California Constitution)**

106.   Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

107.   A dispute and actual controversy has arisen and now exists between the LWVCS and the City regarding the rights, duties, and obligations of the parties to each other as a result of the City's Ordinance.

108.   The LWVCS desires a judicial determination of the respective rights, duties, and obligations of the parties. In particular, Plaintiff desires a declaration that the Ordinance is unconstitutional and constitutes a facial violation of the freedom of speech under Article 1, Section § 2(a) of the California Constitution.

109.   There is an adversary dispute between the parties because they have an adversary interest with respect to the Court's declaration on the issue above.

32

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

110.   Such a declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties, and obligations to each other as a result of the Ordinance.

111.   The LWVCS seeks such declaratory relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 and to the California Declaratory Judgment Act (C.C.P. § 1060) pursuant to this Court's supplemental jurisdiction.

**112.**   As a result of the City's conduct as set forth above, Plaintiff has been compelled to retain legal counsel to prosecute this action and has incurred and will continue to incur attorneys' fees and costs. Pursuant to C.C.P. § 1021.5, Plaintiff is entitled to recover attorneys' fees and costs associated with this action.

**FIFTH CLAIM FOR RELIEF**
**(Injunctive Relief)**
**Facial Violation of the Right to Petition Government for a Redress of Grievances**
**(First and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

113.   Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

114.   The First Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees Plaintiff and their members the right to petition the government for a redress of grievances.

115.   The Ordinance violates the Petition Clause of First Amendment on its face because it impermissibly curtails Plaintiff and their members' rights to petition.

33

116.   As written, the Ordinance applies so broadly to any individual or organization that it eliminates the distinction between advocacy or other civic participation and lobbying regardless of whether a person is, or employs, a professional lobbyist. Thus, under the Ordinance, ordinary people are subject to onerous and expensive requirements, which is not narrowly tailored to further a compelling government interest.

117.   The Ordinance is also facially overbroad. It requires any organization, regardless of whether it employs a professional lobbyist, whose members or employees communicate about local political matters in any way that affects the decision-making of a local official to submit to onerous and expensive registration, reporting, and disclosure requirements. When a law implicates First Amendment rights, it may be invalidated on its face as unconstitutionally overbroad if "its deterrent effect on legitimate expression is both real and substantial" and "it is not readily subject to a narrowing construction by the state courts." See *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975).

118.   The lobbyist ordinance has a deterrent effect on petitioning the government for redress of grievances that is both real and substantial.

119.   The City's regulation of "lobbyists" is not readily susceptible to a narrowing construction. The Ordinance applies broadly to professional lobbyists and ordinary citizens and organizations in the same way, making association by like-

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

minded citizens a potential crime. The Ordinance would have to be rewritten to be construed more narrowly.

120.   The Cupertino has no compelling or significant interest that can justify the Ordinance, and the purported interests listed in the Ordinance are not significant or compelling.

121.   Plaintiff and their members have been chilled from petitioning the government for redress of grievances because of their reasonable aversion to the burdensome and expensive registration, reporting, and disclosure requirements set forth in the Ordinance.

122.   The City is violating or imminently will violate the First Amendment by enforcing the Ordinance against the protected right to petition the government.

123.   As a proximate result of the foregoing acts of the City, Plaintiff has suffered and will continue to suffer hardship and damages, which include, but are not limited to, violation of their and their members' constitutional rights.

124.   The City's actions have and will continue to chill, deter, and infringe on Plaintiff and their members' First Amendment petition rights unless enjoined or restrained by an order of the Court.

125.   To prevent such injury, Plaintiff seeks an injunction pursuant to 42 U.S.C. § 1983 to prohibit violation of their rights under the First Amendment of the United States Constitution.

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

126.   As a result of the City's conduct as set forth above, Plaintiff has been compelled to retain legal counsel to prosecute this action and has incurred and will continue to incur attorneys' fees and costs. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and the costs associated with this action.

**SIXTH CLAIM FOR RELIEF**
**(Declaratory Relief)**
**Facial Violation of the Right to Petition Government for a Redress of Grievances**
**(First and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

127.   Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

128.   A dispute and actual controversy has arisen and now exists between the LWVCS and the City regarding the rights, duties, and obligations of the parties to each other as a result of the Ordinance.

129.   The LWVCS desires a judicial determination of the respective rights, duties, and obligations of the parties. In particular, Plaintiff desires a declaration that the Ordinance is unconstitutionally overbroad and constitutes a facial violation of the right to petition the government for redress of grievances under the First and Fourteenth Amendments of the United States Constitution.

130.   There is an adversary dispute between the parties because they have an adversary interest with respect to the Court's declaration on the issue above.

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

131.   Such a declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties, and obligations to each other as a result of the Ordinance.

132.   Plaintiff seeks such declaratory relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201.

**133.**   As a result of the City's conduct as set forth above, Plaintiff has been compelled to retain legal counsel to prosecute this action and have incurred and will continue to incur attorneys' fees and costs. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and the costs associated with this action.

### SEVENTH CLAIM FOR RELIEF
**(Injunctive Relief)**
**Facial Violation of the Right to Petition Government for a Redress of Grievances**
**(Article 1, Section 3 of the California Constitution)**

134.   Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

135.   Article 1, Section § 3 of the California Constitution guarantees Plaintiff and their members the right to petition the government for redress of grievances.

136.   The Ordinance violates the California Constitution on its face because it impermissibly curtails Plaintiff and their members' rights to petition the government.

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

137.   The Ordinance is not narrowly tailored to further a compelling government interest.

138.   The Ordinance is overbroad on its face under the California Constitution because it has a substantial and real deterrent effect on the exercise of the right to petition the government and is not subject to a more narrowing construction.

139.   The City of Cupertino has no compelling or significant interest that can justify the Ordinance, and the purported interests listed in the Ordinance are not significant or compelling.

140.   Plaintiff and their members have been chilled from petitioning the government for redress of grievances because of their reasonable aversion to the burdensome and expensive registration, reporting, and disclosure requirements set forth in the Ordinance.

141.   The City is violating or imminently will violate Article 1, Section § 3 of the California Constitution by enforcing the Ordinance against the right to petition the government.

142.   As a proximate result of the foregoing acts of the City, Plaintiff has suffered and will continue to suffer hardship and damages, which include, but are not limited to, violations of their and their members' constitutional rights.

143.   The City's actions have and will continue to chill, deter, and infringe on Plaintiff and their members' rights to petition the government under the California Constitution unless enjoined or restrained by an order of the Court.

38

144.   To prevent such injury, Plaintiff seeks an injunction pursuant to 42 U.S.C. § 1983 and also seeks an injunction pursuant to this Court's supplemental jurisdiction, to prevent violation of their petition rights under the California Constitution.

145.   As a result of the City's conduct as set forth above, Plaintiff has been compelled to retain legal counsel to prosecute this action and has incurred and will continue to incur attorneys' fees and costs. Pursuant to C.C.P. § 1021.5, Plaintiff is entitled to recover attorneys' fees and costs associated with the action.

**EIGHTH CLAIM FOR RELIEF**
**(Declaratory Relief)**
**Facial Violation of the Right to Petition Government for a Redress of Grievances**
**(Article 1, Section 3 of the California Constitution)**

146.   Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

147.   A dispute and actual controversy has arisen and now exists between Plaintiff and the City regarding the rights, duties, and obligations of the parties to each other as a result of the City's Ordinance.

148.   Plaintiff is entitled to a judicial determination of the respective rights, duties, and obligations of the parties. In particular, Plaintiff and their members are entitled to a declaration that the Ordinance is unconstitutionally overbroad and

39

constitutes a facial violation of the right to petition the government for redress of grievances under Article 1, Section § 3 of the California Constitution.

149.   There is an adversary dispute between the parties because they have an adversary interest with respect to the Court's declaration on the issue above.

150.   Such a declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties, and obligations to each other as a result of the Ordinance.

151.   Plaintiff seeks such declaratory relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 and the California Declaratory Judgment Act (C.C.P. § 1060.

**152.**   As a result of the City's conduct as set forth above, Plaintiff has been compelled to retain legal counsel to prosecute this action and have incurred and will continue to incur attorneys' fees and costs. Pursuant to C.C.P. § 1021.5, Plaintiff is entitled to recover attorneys' fees and costs associated with the action.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for the following relief:

1.   On an expedited basis, pursuant to Fed. R. Civ. P. 57, declaring that the provisions of Cupertino Municipal Code Chapter 2.100 pertaining to "Business or Organization Lobbyists" and "Expenditure Lobbyists," as it defines those terms, on their face violate the First and Fourteenth Amendments of the United States Constitution;

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

2.    On an expedited basis, pursuant to Fed. R. Civ. P. 57, declaring that the provisions of Cupertino Municipal Code Chapter 2.100 pertaining to "Business or Organization Lobbyists" and "Expenditure Lobbyists," as it defines those terms, on their face violate Article 1, §§ 2 and 3 of the California Constitution;

3.    For judgment in Plaintiff's favor and against Defendants on all counts;

4.    For attorneys' fees pursuant to either 42 U.S.C. § 1988 and/or C.C.P. § 1021.5, or as otherwise authorized by law;

5.    For a preliminary and permanent injunction enjoining Defendants from enforcing Cupertino Municipal Code Chapter 2.100 as to "Business or Organization Lobbyists" and "Expenditure Lobbyists," as it defines those terms;

6.    For Plaintiff's attorneys' fees and costs of suit; and

7.    For such other further relief as the Court deems just and proper.

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

1   Date: July 19, 2022                                    **STEPTOE & JOHNSON LLP**

2

3                                                          By:  */s/ Jamie L. Lucia*
                                                           Jamie L. Lucia (SBN 246163)
4                                                          *jlucia@steptoe.com*
                                                           Amanda C. Schwartz (SBN 307522)
5                                                          *aschwartz@steptoe.com*
                                                           **STEPTOE & JOHNSON LLP**
6                                                          1 Market Street
7                                                          Spear Tower, Suite 3900
                                                           San Francisco, CA 94105
8                                                          Telephone: (415) 365-6700
9                                                          Facsimile: (415) 365-6678
10

11                                                         Michael Dockterman (*pro hac vice* to be filed)
                                                           *mdockterman@steptoe.com*
12                                                         **STEPTOE & JOHNSON LLP**
13                                                         227 West Monroe Street, Suite 4700
                                                           Chicago, IL 60606
14                                                         Telephone:  (312) 577-1300
15

16                                                         Joseph M. Sanderson (SBN 305256)
                                                           *josanderson@steptoe.com*
17                                                         1114 Avenue of the Americas
                                                           New York, NY  10036
18                                                         Telephone:  (212) 506-3900
19

20                                                         Attorneys for Plaintiffs
                                                           LEAGUE OF WOMEN VOTERS OF
21                                                         CUPERTINO-SUNNYVALE

22

23

24

25

26

27

28
                                                      42

1

2

3

**VERIFICATION**

I am Co-President of Plaintiff League of Women Voters of Cupertino-

Sunnyvale (LWVCS). I have personal knowledge of the conduct and intentions of

4

5

6

LWVCS in the above Verified Complaint for Declaratory Relief and Injunctive

Relief and could competently testify thereto if called as a witness. As to all other

7

8

matters, I am informed and believe that the allegations in the above Verified

9

Complaint for Declaratory Relief and Injunctive Relief are true based on my review,

10

11

or review conducted at my instruction, of, among other things, pertinent provisions of

the Cupertino Municipal Code, the records of Cupertino City Council meetings, and

12

13

information reported to me by members of LWVCS.

14

15

16

I declare under penalty of perjury under the laws of the United States of

17

America that the foregoing is true and correct. Executed at Cupertino, California on

18

July 14, 2022.

19

*Tracey Edwards*

20

_____

21

22

23

24

25

26

27

28

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF**