UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF CUPERTINO-SUNNYVALE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CUPERTINO, et al.,<br><br>Defendants. | Case No. 22-cv-04189-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 31 |

Now before the Court is motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant City of Cupertino ("Cupertino"). Court has considered the parties' briefs and relevant legal authority, and the Court HEREBY GRANTS the motion to dismiss.

**BACKGROUND**

Plaintiff, the League of Women Voters of Cupertino-Sunnyvale ("Plaintiff"), brings a facial challenge to the Cupertino Ordinance 21-2222, codified as Cupertino Municipal Code chapter 2.100 (the "Ordinance"). Cupertino Municipal Code ("CMC") § 2.100.010 *et seq*. Plaintiff, a nonprofit public benefit corporation registered under 26 U.S.C. section 501(c)(4), is a local chapter of the nonpartisan League of Women Voters of the United States. One of its primary goals is to ensure opportunities for effective and inclusive voter participation in government decision-making, often through advocacy for or against particular laws or policies. (Complaint at ¶¶ 29, 31.)

The Ordinance, operative as of July 1, 2021, is a lobbying registration and disclosure law. The Ordinance provides information to city officials and to the public about lobbying activity in connection with changes in the law or the award of city contracts, permits, or positions. The stated purpose of disclosure of lobbyists' identities and activities is to "foster[] public confidence in government officials by making government decision-making more transparent to the public." CMC § 2.100.010. The stated purpose of the Ordinance is to "impose registration and disclosure requirements on those engaged in lobby efforts to influence decisions of City policy maker for Compensation." *Id*.

The Ordinance defines lobbying as influencing or attempting to influence a Legislative Action or Administrative Action. §2.100.030(n). The Ordinance defines "influencing" as any "purposeful communication" that promotes, supports, modifies, opposes, causes the delay or abandonment of conduct, or intentionally affects the behavior of a city official through persuasion, information, incentives, statistics, studies, or analyses. *Id.* A Legislative Action refers to ordinances, resolutions, City contracts, or other official action of the Mayor, City Council, or City boards. § 2.100.030(m). An Administrative Action refers to rules, regulations, contracts, permits, licensing, or hiring by the City. § 2.100.030(b). The Ordinance defines three types of lobbyists: (1) contract lobbyists who are paid to lobby for a client; (2) business or organizational lobbyists that direct their paid employees or officers to lobby in an aggregate amount of ten or more hours within a year; and (3) expenditure lobbyists who pay $5,000 or more in a year to carry out advertising or public relations campaigns to convince others to directly lobby the government. §§ 2.100.030(o)(1), (2), (3).

The Ordinance requires all lobbyists, as defined, to register with the City Clerk, pay annual registration fees, and disclose a list of detailed information to the City. (Complaint at ¶¶ 49-52.) The Ordinance also imposes fines and lobbying debarment for violating the terms of the Ordinance. CMC §§ 2.100.080(c); 2.100.150, 2.100.170.[1]

---

[1] The Court notes that the Ordinance at issue here is materially identical to similar lobbying registration ordinances in Santa Clara County, and the cities of Long Beach, Sacramento, Santa Clara, San Jose, and San Diego.

1    Plaintiff claims that the Ordinance violates the free speech and petition clauses of the
2 federal and California constitutions.² Plaintiff alleges that the Ordinance is an overbroad, speaker-
3 based, content-based regulation that chills protected First Amendment expression, which subjects
4 the law to strict scrutiny. Plaintiff contends that Cupertino must show that the Ordinance is
5 narrowly tailored to further a compelling government interest justifying its burdensome
6 registration and reporting requirements. Plaintiff argues that the facially overbroad Ordinance has
7 a chilling effect on political speech and that it has had that effect on Plaintiff and its members,
8 deterring them from exercising their protected rights to assemble, to engage in free speech, and to
9 petition the government.
10   Cupertino moves to dismiss the complaint on the basis that Plaintiff has failed to state a
11 facial overbreadth challenge to the Ordinance.³ The Court shall address other relevant facts in the
12 remainder of its order.

## ANALYSIS

**A.    Legal Standard on Motion to Dismiss.**

Cupertino moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). In order for a district court to have subject matter jurisdiction over a plaintiff's claims, a plaintiff must present a live case or controversy, as required by Article III of the U.S. Constitution. *See* U.S. Const. art. III section 2, cl. 1. In order for there to be a case or controversy within the meaning of Article III, a

---

[2] Generally, when courts interpret a provision of the California constitution that is similar to the federal Constitution, they will not depart from United States Supreme Court jurisprudence regarding the construction of the similar federal provision unless given a cogent reason to do so. *See Edelstein v. City and County of San Francisco*, 29 Cal. 4th 164, 179 (2002) (citing *People v. Monge*, 16 Cal. 4th 826, 844 (1997)). Plaintiff contends that because the Ordinance fails to pass federal Constitutional muster, it also fails for the same reasons under Article 1 of the California Constitution. *See Glendale Assocs., Ltd. v. NLRB*, 347 F.3d 1145, 1154 (9th Cir. 2003).

[3] Cupertino also moves to dismiss Plaintiff's official capacity claims as duplicative as official capacity claims are claims against the City itself. *See, e.g., Larez v. Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) ("A suit against a governmental officer in his official capacity is equivalent to a suit against the government entity itself.") Plaintiff does not oppose dismissal of the official capacity claims. The motion is GRANTED as to those claims.

3

plaintiff must have standing to pursue their claims.

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

**B.      Standing.**

In order to establish standing to sue, a plaintiff must show injury, a causal connection to the conduct complained of, and redressability through a favorable decision. *See Lujan v. Defs. of Wildlife*, 594 U.S. 555, 560-61 (1992). The Court finds that Plaintiff has standing to challenge the provisions of the Ordinance pertaining to Business or Organizational Lobbyists and Expenditure Lobbyists. At this procedural posture and taking the allegations as true, Plaintiff has satisfactorily alleged that it has suffered an injury-in-fact, that is "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," to both its organizational interests and its members. *See Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).

4

1    Plaintiff brings a facial challenge to the Ordinance. A facial challenge of overbreadth may
2    be made only if "a substantial number of its applications are unconstitutional, judged in relation to
3    the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). The
4    "overbreadth doctrine operates as a narrow exception permitting the lawsuit to proceed on the
5    basis of 'a judicial prediction or assumption that the statute's very existence may cause others not
6    before the court to refrain from constitutionally protected speech or expression.'" *Get Outdoors*
7    *II, Ltd. Liab. Co. v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007) (citation omitted) *see*
8    *also Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (holding that the "First Amendment needs
9    breathing space" if it is to have any effect and third-parties may bring First Amendment challenges
10   to protect the rights of others who may refrain from constitutionally protected activity due to the
11   overly broad sweep of the statute at issue). Overbreadth should be used "sparingly and only as a
12   last resort" when a limiting condition cannot be placed on the challenged law. *Broadrick*, 413
13   U.S. at 613. "[O]verbreadth is 'strong medicine' that is not to be 'casually employed.'" *Marquez-*
14   *Reyes v. Garland*, 36 F.4th 1195, 1201 (9th Cir. 2022) (citation omitted). "A statute is not
15   overbroad just because 'one can conceive of some impermissible applications.' … There must …
16   be a 'realistic danger that the statute itself will significantly compromise recognized First
17   Amendment protections of parties not before the Court.'" *Id.* (citations omitted).

18   **C.    Level of Scrutiny and Application.**

19   Not all restrictions on speech are subject to the strict scrutiny standard. Strict scrutiny will
20   be applied if there is a significant interference or "appreciable impact" on the exercise of an
21   individual's fundamental right. *Fair Political Practices Com. v. Superior Court*, 25 Cal.3d 33, 47
22   (1979). Strict scrutiny is not applied when the challenged regulation "merely has an incidental
23   effect on exercise of protected rights." *Id.*

24   In *Fair Political Practices*, the California Supreme Court addressed the constitutionality of
25   regulations governing lobbyists codified in the Political Reform Act of 1974. *Id.* at 37, citing Cal.
26   Gov. Code § 81000 *et seq.* Similar to the Ordinance at issue here, under the Policial Reform Act,
27   lobbyists were required to register and report all payments for lobbying activities. Similar to
28   plaintiff here, advocates against these regulations argued that because free speech and petition

5

rights were implicated, the court must apply strict scrutiny. However, with respect to the registration and reporting requirements, the Supreme Court found that these provisions were not "direct limitations on the right to petition for redress of grievances." *Id.* at 47. The Court reasoned that the burden created by the registration and reporting requirements did not substantially interfere with the lobbyist's ability to "raise his voice," and the "[w]hile the burden of disclosure might be substantial for those engaging in extensive lobbying activities, the burden is not as great when viewed in the context of the total activities engaged in." *Id.* The Court further held that "the burden placed on employers of lobbyists to disclose their expenditures for lobbying purposes, and the action thereby sought to be influenced, does not constitute a substantial interference with the exercise of petition and speech rights." *Id.* at 48.

The application of the less stringent exacting scrutiny review has also been applied by the United States Supreme Court in *Citizens United* with regard to disclaimer and disclosure requirements. *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 366 (2010). This "exacting scrutiny" requires a substantial relationship between the disclosure requirements and a "sufficiently important" governmental interest. *Id.* at 366-67. The Court finds that the disclosure and reporting requirements imposed by the Ordinance on business or organizational lobbyists and expenditure lobbyists does not directly regulate who can speak or what they can say. Although the Ordinance creates a burden, this burden does not act as a prohibition. And, further, the disclosure and reporting requirements bear a substantial relationship to a sufficiently important government interest.

In *United States v. Hariss*, the Supreme Court found that Congress possesses a valid interest in determining who seeks to influence legislation. 346 U.S. 612, 625-26 (1954). The California Supreme Court also has recognized the existence of the public interest "in determining the source of voices seeking to influence legislation" and has enforced regulations which "reasonably require the professional lobbyist to identify himself and disclose his lobbying activities." *Fair Political Practices*, 25 Cal.3d at 47. The stated purpose of the Cupertino Ordinance is to "foster[] confidence in government officials by making government decision-making more transparent to the public" and to "ensure that City Officials are made aware of the

6

interests that Lobbyists represent when the officials are lobbied." CMC § 2.100.010. In accordance with these principals, this Court finds that there is a vital government interest in providing disclosure to the public of individuals who seek to influence legislation through the expenditure of money. *See e.g., Smith v. City of San Jose*, 2013 WL 6665712, at *7 (Cal. Ct. App. Dec. 17, 2013). "Transparency in the electoral process, and the dissemination of information to decisionmakers has long been recognized and acknowledged by both the United States Supreme Court and the California Supreme Court as important governmental interests." *Id.* This Court similarly finds that "there is a vital government interest in providing information to the public about those who seek to influence local government action through lobbying activity." *Id.* There is no distinction between providing such transparency with respect to federal or state officials and the same government interest in providing transparency to city officials and local lawmakers. *See id.*

Having found that there exists a sufficiently important governmental interest, the Court must address whether the lobbying regulations are sufficiently related to this interest. In this analysis, the Court must consider the extent of the burden placed on First Amendment rights. *Buckley v. Valeo*, 424 U.S. 1, 68 (2003). Here, the Court finds that the Ordinance does not restrict the amount of lobbying a lobbyist may engage in or how much any particular lobbyist may spend. The Ordinance does not differentiate among or restrict speech according to speaker or content. Nothing in the Ordinance reflects a "preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)." *Turner Board. Sys. v. FCC*, 512 U.S. 622, 657-58 (1994). The reporting and disclosure requirements do not "substantially interfere with the ability of the lobbyist to raise his voice. While the burden of disclosure may be substantial for those engaged in extensive lobbying activities, the burden is not great when viewed in the context of the total activities engaged in." *Fair Political Practices*, 25 Cal.3d at 47. It is well settled that lobbyist registration laws like the Ordinance are supported by an important governmental interest in transparency. *See, e.g., Citizens United*, 558 U.S. at 369; *Hariss*, 347 U.S. at 626.

Further, the extensive list of exemptions provides exceptions to the regulatory scheme for

some.  For example, there is an exemption for those who are purely engaged in media, meaning newspapers or other regularly published periodicals, when limited to "the ordinary course of news gathering or editorial activity, as carried out by members of the press."  CMC 2.100.030(p)(2).  This exemption clearly covers the one cited instance of purported self-censorship by Plaintiff of its newsletter, Cupertino Matters.  Further exempted from the requirements of the Ordinance are those "whose communications regarding any Legislative Action or Administrative Action are solely limited to appearing at or submitting testimony for any public meeting held by the City or any of its agencies … as long as the communications thereto are public records available for public review."  CMC 2.100.030(p)(4).

The Court finds that the challenged provisions of the Ordinance satisfy the appropriate exacting scrutiny and are not facially overbroad.  Accordingly, Plaintiff has failed to state a facial challenge to the Ordinance.  Although these are questions of law and it is unlikely that Plaintiffs will be able to plead additional facts that alter the Court's analysis, in the interests of justice, the Court GRANTS Cupertino's motion to dismiss with leave to amend.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Cupertino's motion to dismiss with leave to amend.  If it so elects, Plaintiff may file an amended complaint, in compliance with this Order, by no later than June 2, 2023.  In the absence of such a filing, the Court shall dismiss this matter with prejudice.

**IT IS SO ORDERED.**

Dated:   May 1, 2023

_____
JEFFREY S. WHITE
United States District Judge